IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH WAYNE NEWSOM, JR., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-21-261-GLJ ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Claimant Kenneth Wayne Newsom, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was fifty-two years old at the time of the administrative hearing.  (Tr. 37, 396).  He completed Tenth Grade and has worked as a construction worker II, mobile-home-lot utility worker, and stores laborer.  (Tr. 28, 443).  Claimant alleges that he has not engaged in substantial gainful activity since April 12, 2019, due to hypertension, diabetes mellitus type 2, osteoarthritis, chronic low back pain, vitamin D deficiency, hepatitis C, chronic depression, and mental illness.  (Tr. 20, 442).

### Procedural History

On April 12, 2019, Claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His application was denied.  ALJ J. Leland Bentley conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated July 8, 2020.  (Tr. 18-30).  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  At step two, the ALJ found Claimant had the severe impairments of lumbar spine degenerative disc disease, non-insulin-dependent diabetes mellitus type II, hypertension, obesity, adjustment disorder with depressed mood, chronic depression, bipolar disorder, and anxiety, as well as the nonsevere impairments of Hepatitis C and history of methamphetamine and alcohol

dependence. (Tr. 20-21). The ALJ noted that the record contains a "nonspecific" diagnosis of osteoarthritis, but no diagnostic imaging or other objective findings to establish it as a medically determinable impairment. (Tr. 21). The ALJ then found that Claimant did not meet a Listing at Step 3. At step four, he found Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), but that he needed to avoid climbing ladders/scaffolds and heights. The ALJ further found Claimant could understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision. The ALJ determined he could interact and respond appropriately to others in a stable work setting, but would need to avoid work-related interaction with the general public, and that he could adapt to a routine work setting where changes are infrequent, well explained, and introduced gradually. (Tr. 24). The ALJ then found that although Claimant could not perform his past relevant work, he was nevertheless not disabled because there was work he could perform, *i.e.*, small products assembler I, subassembler, and marker. (Tr. 28-29).

## Review

Claimant contends that the ALJ erred by in assessing his RFC and in identifying jobs he could perform at step five. More specifically, he contends the ALJ failed to properly evaluate medical opinion evidence as to his mental impairments, and that the ALJ should have determined he had moderate limitations in concentration, persistence, and pace (affecting both the RFC and the ultimate jobs identified at step five). The Court agrees

with Claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The record indicates Claimant was incarcerated for a certain period of time and was discharged in January 2018, prior to his April 12, 2019 application date. Oklahoma Department of Corrections ("ODOC") medical records reflect Claimant had, upon discharge, a diagnosis of being a Hepatitis C carrier, as well as depressive disorder, diabetes mellitus, and hypertension. (Tr. 655). The following month, Claimant established medical care and his assessments included diabetes mellitus, as well as chronic low back pain and osteoarthritis based on L4/L5 left transverse process tenderness with palpation. (Tr. 740).

Within two months of his release, Claimant began mental health treatment and was assessed with an unspecified mood/affective disorder. (Tr. 752). By March 7, 2018, his diagnoses included major depressive disorder, moderate, with anxious distress, as well as an unspecified anxiety disorder. (Tr. 755-756). The majority of Claimant's treatment was with Ms. Myra Mabray, LPC, LADC. (Tr. 741-869, 879-955, 986-1051, 1054-1112). Treatment notes reflect, *inter alia*, themes of working with Claimant on interacting with people without aggression and co-existing with others. (Tr. 844-858). On August 5, 2019, Ms. Mabray noted Claimant had been clean for eighteen months and was building a new life without drugs and alcohol. (Tr. 1048-1049). On March 9, 2020, Claimant missed an appointment because he "had the opportunity to work." (Tr. 1098).

Beginning May 28, 2019, through June 9, 2020 (over a year), the record reflects a number of "Choctaw Tribal Health Forms" completed by Dr. Jonathan Doyle, M.D., indicating that the form "is used strictly in our determination of eligibility & required for

our General Assistance Program." Each form indicates that Claimant's chronic depression affects him mentally with regard to employment, but that it was controlled by medication and he should return in three months. Additionally, the form indicates Dr. Doyle's belief that Claimant could be made employable by treatment, but that the approximate length of his continued incapacity is unknown. (Tr. 877, 958, 971, 1114).

On April 17, 2019, Ms. Mabray completed a "Treating Source Statement – Mental" for Claimant, indicating she has treated him twice weekly since November 28, 2018, and his diagnoses include bipolar disorder I and chronic depression. (Tr. 962). When asked to indicate signs and findings of his impairments, she checked thirty-six symptoms out of fifty-six, including difficulty thinking or concentrating, seclusiveness or autistic thinking, emotional withdrawal or isolation, illogical thinking, and deeply ingrained, maladaptive patterns of behavior. (Tr. 963). She indicated that pain was not a factor in his mental ability/aptitude for work, but that his anxiety caused physical pain when he had thoughts of interacting with others socially. (Tr. 964). She indicated he would struggle in a work setting with, *inter alia*, regular attendance, public contact, making decisions, interacting with peers, having his performance supervised or evaluated, schedules, and interactions with supervisors. (Tr. 964). She noted a substantial loss of ability to function with regard to maintaining regular attendance and being punctual within customary tolerances as well as numerous other categories of mental abilities needed to work. (Tr. 964-965). She also indicated he had numerous "Seriously Limited or Marked" problems with interacting with supervisors, co-workers, and others, as well as concentration and adapting. (Tr. 966-967). Notably, she indicated that Claimant had only marginal adjustment, or minimal capacity to

adapt to changes in his environment or to demands not already a part of his daily life, despite diminished signs and symptoms from his impairments. (Tr. 967). In other words, his progress did not mean he could take on more demands than were already a part of his life. She expected he would be absent from work four or more days per month. (Tr. 968).

State reviewing physicians determined as to his mental impairments that Claimant could perform simple tasks under routine supervision and meet the demands of a work environment, but that he can only related to supervisors and co-workers for incidental work purposes and could not relate well to the general public. (Tr. 258). On reconsideration, a different physician determined Claimant could understand, recall and perform simple and detailed tasks and make related judgments; focus for two-hour periods with routine breaks; pace and persist for an eight-hour workday and forty-hour workweek despite psychological symptoms; interact appropriately with co-workers and supervisors to learn tasks, accept criticism, and attend meetings; and adapt to a work setting; but that he was unable to interact appropriately or tolerate contact with the public. (Tr. 306).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony, as well as the medical evidence of record. (Tr. 24-28). As to his mental impairments, the ALJ found Claimant's allegations of difficulty interacting with others were not substantiated to the degree alleged because his therapy notes reported medication helped him and he said he was learning to live in society and to better interact with others. (Tr. 26). The ALJ found significant Claimant's reported progress with his anger when he did not confront a person tailgating him on the road, but acknowledged Claimant's continued reports of depressive, anxiety, and anger symptoms. (Tr. 26). As for the opinion

evidence, he found Ms. Mabray's opinion unpersuasive and poorly supported because (i) she stated Claimant's anxiety caused him pain without details or explanation, (ii) her treatment notes recorded improved social functioning and improvement on medication, and (iii) her opinion was inconsistent with Dr. Seals and Dr. Doyle and Claimant's own statements. (Tr. 27). Noting that Dr. Doyle's signed forms were clearly for tribal use only, the ALJ then summarized the forms without analysis, other than to say that any opinion as to Claimant's ability to work is neither valuable nor persuasive. (Tr. 27). The ALJ found the state reviewing physician opinions as to his mental impairments both well supported, but found the reconsideration opinion was more persuasive, as it contained citations to the record and was consistent with the evidence that he could interact and respond appropriately to others in a stable work setting, and that he could adapt to a routine work setting where changes were infrequent, well explained, and introduced gradually. (Tr. 27-28). The ALJ specifically noted the claimant's anxiety, but found he could interact and respond appropriately to others in a stable work setting because he reported the ability to go into public and had cooperative interactions with his treatment providers. (Tr. 28). The ALJ then concluded that Claimant was not disabled. (Tr. 28-30).

  The claimant first argues that Claimant would be found disabled if the ALJ had read the opinions of Dr. Doyle and Dr. Mabray together. Specifically, he contends that the ALJ entirely discounted the numerous *abnormal* signs he exhibited during exams as well as the significant varying depressions scores over the course of his treatment and mood disturbances seen at his appointments. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these

rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

   The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison

between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner contends there was no error because the ALJ supported his findings by reference to Plaintiff's statements regarding improvement, Claimant had self-reported two single instances of positive interactions, and Claimant had not actively fought someone tailgating him. Furthermore, the Commissioner contends that Claimant fails to cite further limitations in the record (ignoring LPC's Mabray's opinion).

The Court finds that the ALJ erred in his analysis. Here, the ALJ focused on Claimant's reports of progress in treatment without discussing the records that *supported* the limitations assigned by LPC Mabray. A report of progress or improvement with medication does not definitively establish a claimant's ability to perform the demands of full-time work, nor, specifically, do three isolated incidents indicate Claimant is capable of functioning appropriately in a work setting. For instance, resisting the urge to fight a tailgater is a far cry from the ability to interact with supervisors in a work environment. Indeed, Ms. Mabray indicated he could only marginally adjust to any additional changes in his life, even after making progress. Furthermore, even though the ALJ was not required to consider Dr. Doyle's opinion as to whether Claimant *can* work, it is noteworthy that Dr. Doyle found Claimant's mental impairments affected his ability to work for over a year and that he did not know when that would change. 20 C.F.R. § 416.909 ("[Y]our impairment . . . must be expected to last for a continuous period of at least 12 months."). This failure to properly account for the evidence from Claimant's treatment providers has a direct impact on the ALJ's assessment as to the claimant's ability to perform the mental

demands of his RFC.  This was error.  *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013).  Here, the ALJ has failed to explain how, *inter alia*, Claimant's limited ability to interact with others (including supervisors/authority figures, co-workers, *and* the general public), only resulted in a restriction from interacting with the general public.  The Court must be able to follow the logic, and here it cannot.  *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Finally, Claimant asserts that the ALJ *should* have propounded a hypothetical to the Vocational Expert ("VE") at step five that included a moderate limitation in concentration, persistence, and pace.  However, the ALJ determined at step three that the claimant only had a mild limitation in this area (Tr. 23), and at step four found Claimant could "understand, remember, and apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed work tasks with routine supervision." (Tr. 24).  An ALJ is not required to include additional limitations in an RFC assessment, or in hypothetical questions posed to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in h[er] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *see also Adams v. Colvin*, 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC.") (citing *Qualls*, 206 F.3d at 1372). Moreover, the Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *id.* at 1204, the undersigned Magistrate Judge finds here that the hypothetical reflected the RFC assigned.  The Court notes, however, that remand may result in different findings affecting the step five determination.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the all the medical opinions of record.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work Claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of June, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**